UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JUDY J. MANGIONE,

                                     Plaintiff,

           v.                                                              1:05-CV-589
                                                                     (NPM/GJD)

COMMISSIONER OF SOCIAL
SECURITY,

                                      Defendant.

_____

THOMAS C. ERWIN, ESQ., Attorney for Plaintiff
WILLIAM H. PEASE, Asst. U.S. Attorney for Defendant

GUSTAVE J. DIBIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

      This matter was referred to me for report and recommendation by the Honorable Neal P. McCurn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).

## PROCEDURAL HISTORY

      Plaintiff filed an application for disability insurance benefits on August 13, 2003.  (Administrative Transcript ("T.") at 30, 36-38).  The application was denied initially and a request was made for a hearing.  A hearing was held before an Administrative Law Judge ("ALJ") on September 28, 2004.  (T. 196-219).  In a decision dated November 12, 2004, the ALJ found that plaintiff was not disabled.  (T. 13-18).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on April 22, 2005.  (T. 3-5).

## CONTENTIONS

The plaintiff makes the following claims:

(1) The Commissioner erred in finding that plaintiff's impairments did not meet any of the listings.  (Brief, p. 7).

(2) The Commissioner failed to give controlling weight to the opinions of plaintiff's treating physicians.  (Brief, p. 8).

(3) The Commissioner's Residual Functional Capacity assessment is not supported by substantial evidence in the record.  (Brief, p. 10).

(4) The Commissioner's conclusion that plaintiff is "not disabled" is not supported by substantial evidence in the record.  (Brief, p. 11).

The defendant argues that the Commissioner's determination is supported by substantial evidence in the record and must be affirmed.

## FACTS

### A.  Non-Medical Evidence and Testimony:

Plaintiff, who was 53 years old at the time of the ALJ's hearing, has a lengthy work history (T. 44-48), and in recent years worked mainly as a certified nurse's aid. (T. 64, 79).  Plaintiff's work as a certified nurse's aid involved caring for geriatric patients and involved heavy lifting and moving of those patients. (T. 81, 85).  Plaintiff also worked as a cashier at Rite-Aid stores between late November of 2002 and May of 2003. (T. 79).  Plaintiff stopped working during May of 2003. (T. 200).

At the hearing on September 28, 2004, plaintiff testified that she is extremely nervous and suffers from chronic fatigue, diabetes, and residual effects from treatment for hepatitis C.  (T. 207, 208, 209).  Plaintiff stated that she is able to do household

2

chores, but they take a long time, and she gets tired easily and rests during whatever chores she is performing. (T. 209). Plaintiff stated that she spends most of her time in her home, and until recently, spent four to five hours on a computer but not at one sitting. (T. 212, 218). Plaintiff testified that she has difficulty concentrating and gets very frustrated and nervous when dealing with people. (T. 216, 217). Plaintiff also testified that her sleep is interrupted every two hours, and that she has no stamina. Plaintiff is presently using the medication Lexapro, which helps calm her anxiety. (T. 217, 218). When asked whether she is attending any counseling or mental therapy, plaintiff responded that she could not afford it; it is a problem getting there, and "*I don't believe in it.*" (T. 207)(emphasis added) .

## B. Medical Evidence:

Plaintiff has a long history of hepatitis C that became worse during May of 2003, causing plaintiff to stop work. (T. 203). Plaintiff also testified that she experienced a panic attack while working at Rite-Aid. (T. 203). Plaintiff began treatment for her hepatitis C with Dr. Jeffrey Gerson. The treatment consisted of 24 weeks of Interferon injections and close monitoring with blood testing. Dr. Gerson treated plaintiff from June of 2003 (T. 101) to March of 2004 (T. 155). Dr. Gerson's office notes show visits for continuing treatment for hepatitis C during June, August, November and December 2003 (T. 161, 159), and 2004 (T. 157, 155).

According to Dr. Gerson's detailed reports, the course of Interferon therapy progressed well (T. 161, 159), and the side effects of nausea and anorexia diminished and did not present serious problems. (T. 99, 161, 159). Dr. Gerson's reports

3

specifically state several times that plaintiff ***did not have any acute complaints*** except for some nausea (T. 159, 161), and that plaintiff was ***not experiencing any rash, fatigue, or depression from the illness or the treatment***. (T. 163).

During October of 2003, plaintiff was examined by psychologist John Seltenreich, Ph.D. for a consultative psychiatric examination. (T. 116-119). Plaintiff told the psychologist that she was experiencing weight loss and loss of appetite, in addition to depression, fatigue and concentration problems. On October 7, 2003, ***one day after*** her visit for the consultative psychiatric examination, plaintiff told Dr. Gerson that she was ***not experiencing fatigue or depression*** (T. 163). Other notes from Dr. Gerson during early 2004 state that plaintiff's weight was relatively stable (T. 157), and that plaintiff gained weight since her visit in January of 2004. (T. 155).

Plaintiff has been treated by physicians in a family practice group known as Capital Care Medical Group. (T. 143-149, 105-111). Plaintiff's two treating physicians were Lisa Bevilaqua, D. O. and Amy Campion, D.O. Drs. Campion and Bevilaqua began treating plaintiff during May of 2003 for her panic attacks. When plaintiff visited these physicians, she complained of fatigue, depression, chronic pain in her right upper quadrant, nausea, and depressed appetite. (T. 109). Plaintiff's family physicians prescribed the medication Lexapro (T. 108) and noticed plaintiff's improvement after using that medication. (T. 108, 106, 105). Dr. Campion's notes from the May 2003 visit state that plaintiff "[d]eclined counseling." (T.110). It appears that Dr. Campion had recommended counseling because this comment is in the section in which the doctor states that plaintiff is starting the Lexapro. (T. 110).

4

The office notes from a visit on September 30, 2003 state that plaintiff ***denied*** loss of appetite, ***denied*** lack of energy, and ***denied*** feelings of worthlessness. (T. 105). Plaintiff did complain of additional anxiety. (T. 105).  The doctor's notes state that plaintiff's depression "remains significantly improved." (T. 105).  Dr. Bevilaqua recommended thirty minute periods of exercise, three or four times per week. (T. 105). This same recommendation for exercise was given at other times in June and August of 2004. (T. 143, 145).  The records also show that plaintiff's blood sugar was fluctuating, and that she did have a panic attack during August of 2004. (T. 143, 145). As a result, Dr. Bevilaqua increased plaintiff's medication. (T. 143).  There is one notation in the record about plaintiff's fatigue, and Dr. Campion wrote that plaintiff was feeling fatigued during "recent" times. (T. 146).

In his report of the psychiatric consultative examination  (T. 116-119), Dr. Seltenreich made many findings about plaintiff's mental capacity, and found that plaintiff was able to maintain attention and concentration, could consistently perform simple tasks and learn new tasks, and was able to perform complex tasks independently when plaintiff was physically able. (T. 118).  Psychologist Seltenreich reported that plaintiff's panic attacks were controlled by medication, and that plaintiff denied fears of being in public (agoraphobia). (T. 117).  The report states that plaintiff "may rely on public transportation" (T. 118); does socialize with some friends, and that plaintiff is having problems dealing with stress, but "appears to be able to relate adequately with others ... ." (T. 118).

Dr. Seltenreich found that his evaluation was consistent with allegations of

depression and anxiety (T. 118) and that plaintiff might benefit from some

*"psychiatric care and counseling . . ."* (Emphasis supplied) (T. 119).

## DISCUSSION

### 1.    <u>Disability Standard</u>

      To be considered disabled, a plaintiff seeking disability insurance benefits or

SSI disability benefits must establish that she is "unable to engage in any substantial

gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months ...." 42 U.S.C.

§ 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that [she] is not only unable to do [her] previous work but cannot,
> considering [her] age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate area in
> which [she] lives, or whether a specific job vacancy exists for [her], or
> whether [she] would be hired if [she] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

      The Commissioner uses a five-step process, set forth in 20 C.F.R.  §§ 404.1520

and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If [she] is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits [her] physical or mental ability to
> basic work activities.  If the claimant suffers such an impairment, the
> third inquiry is whether, based solely on medical evidence, the claimant
> has an impairment which meets or equals the criteria of an impairment
> listed in Appendix 1 of the regulations.  If the claimant has such an

impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; ... .  Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir. 1984).

## 2.   Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  A

court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)(citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

## 3.    <u>Listed Impairments</u>

Plaintiff's first claim is that her impairments meet the severity of Listings 12.04 (Affective Disorders) or 12.06 (Anxiety-Related Disorders). (Brief p.7). The Listed Impairments appear in Appendix 1 of the Social Security Regulations. 20 C.F.R. Part

8

404, Subpt. P., App. 1.  As stated above, if a plaintiff's impairment or combination of impairments meet the severity of a Listed Impairment, then plaintiff will be found disabled at Step 3 of the five-step evaluation procedure, without considering plaintiff's age, education or prior work experience. 20 C.F.R. 404.1520.

Although plaintiff argues that the ALJ failed to completely analyze whether plaintiff met certain listed impairments (12.04 and 12.06), plaintiff does ***not*** give any references to the record or analysis of the ***many*** factors necessary to meet the elements of those listings.  The ALJ ***did*** review several possible listed impairments and gave reasons why plaintiff does ***not*** meet those listings.  Plaintiff has not given any specific reasons showing that these analyses are incorrect.  Since plaintiff has not supported that argument with ***specific references to the record***, and the ALJ specifically considered the Listings, this court finds that the ALJ's decision that plaintiff's impairments do not meet or equal the severity of a listed impairment is supported by substantial evidence.

## 4.    Treating Physician

While a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and ***not inconsistent with other substantial evidence***. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d).  If the treating physician's opinion is contradicted by other substantial evidence, the ALJ is not required to give the opinion controlling weight. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must, however, properly analyze the reasons that the report is rejected. *Id.*

An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

If the treating physician's opinion is not given controlling weight, the ALJ must assess the following factors: the length of the treatment relationship; the frequency of examination for the condition in question; the medical evidence supporting the opinion; the consistency of the opinion with the record as a whole; the qualifications of the treating physician; and other factors tending to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(d)(6); 416.927(d)(2)-(d)(6). Failure to follow the proper standard is a ground for reversal. *Barnett v. Apfel*, 13 F. Supp. 2d 312, 316 (N.D.N.Y. 1998)(citation omitted).

Plaintiff in this case argues that the ALJ failed to follow the opinions of plaintiff's treating physician, Dr. Bevilaqua, who completed detailed mental and physical RFC assessments. (T. 185-195). The ALJ specifically found that Dr. Bevilaqua's assessments about plaintiff's mental and physical capacities were too "extreme," and he rejected them. (T. 21). The record supports the ALJ's conclusion that Dr. Bevilaqua's RFC assessments were ***extreme and not supported by her own medical records or the other medical records in the administrative transcript***.

Dr. Bevilaqua's records show that plaintiff was ***not*** experiencing extreme fatigue and that plaintiff's panic attacks were being helped by the medication plaintiff was using. (T. 108, 143-149). Dr. Bevilaqua's records specifically state that plaintiff denied lack of energy and only one entry shows that plaintiff was "fatigued" ***recently*** during April of 2004. (T. 146). The records do ***not*** show continuous complaints of

10

fatigue or extreme fatigue.

Similarly, Dr. Gerson's records in both 2003 and 2004 also do ***not*** show that plaintiff was complaining of extreme fatigue, and Dr. Gerson specifically recorded that plaintiff was ***not*** experiencing fatigue (T. 163), and did not have any other acute complaints except nausea and "a bit" of fatigue. (T. 155). To the extent that Dr. Bevilaqua's RFC assessments find that plaintiff is unable to perform work because of extreme fatigue, they are ***not*** supported by the record, and the ALJ's rejection of those assessments is supported by substantial evidence in the record.

Dr. Bevilaqua is a family physician, and although any physician is qualified to comment generally on a patient's mental capacity, Dr. Bevilaqua has given very specific opinions about plaintiff's mental abilities and aptitudes. (T. 192, 193). It is unclear what Dr. Bevilaqua's conclusions are based upon when she includes that plaintiff has "social phobia" (T. 193) or recurrent obsessions or compulsions, short-term memory impairment (T. 191), or that plaintiff is emotionally fragile. (T. 186). Dr. Bevilaqua states on page 193 that plaintiff has "no useful ability to function in using public transportation." Plaintiff's testimony is exactly contrary since plaintiff stated that she uses public transportation. (T. 216.) Based on a review of the entire record, the ALJ's rejection of Dr. Bevilaqua's RFC assessments is supported by substantial evidence in the record. Those assessments are inconsistent with records from Dr. Gerson and with Dr. Bevilaqua's own records.

## 5.   **Residual Functional Capacity (RFC)**

In rendering a residual functional capacity (RFC) determination, the ALJ must

consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545; 416.945. *See Martona v. Apfel*, 70 F. Supp. 2d 145 (N.D.N.Y. 1999)(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Verginio v. Apfel*, 1998 WL 743706 (N.D.N.Y. Oct. 23, 1998); *LaPorta v. Bowen*, 737 F. Supp. at 183.

In this case, an RFC assessment of plaintiff's physical capabilities was completed on October 29, 2003 by a social security disability analyst. (T. 121-126). This analyst found that plaintiff would be able to lift twenty pounds occasionally and ten pounds frequently, stand approximately six hours, sit for about six hours and would not have limitations on pushing or pulling or other postural movements. (T. 122-124). Based on the record, this reviewer stated that plaintiff's allegations of chronic fatigue were credible. ( T. 124, 125).

A "Psychiatric Review Technique" form was completed by Dr. Abdul Hameed, a psychiatrist on October 3, 2003. (T. 127-141). The purpose of this review is to assist the ALJ in determining whether plaintiff's impairments met or equaled the severity of listed impairments. After reviewing the record, Dr. Hameed found that plaintiff did not have any severe psychiatric impairments, and thus, did not proceed to consider each listed impairment separately. (T. 127).

The record contains two other RFC assessments by Dr. Lisa Bevilaqua, both

completed during late August of 2004.  (T. 185-195).  Dr. Bevilaqua found that
plaintiff would have difficulty thinking and concentrating, had psychological
problems, headaches, and that her emotional state was "fragile." (T. 186, 192, 194).
Dr. Bevilaqua believed that plaintiff's anxiety limited her to sitting or standing no
more than thirty minutes at any one time, and that plaintiff's social phobia would
prevent plaintiff from using public transportation. (T. 193).

Notwithstanding the ALJ's justified rejection of the treating physicians'
"extreme" RFC assessments, it is unclear how the ALJ arrived at his determination of
plaintiff's residual functional capacity.  First, the court would point out that in
determining that plaintiff could perform light work, the ALJ stated that he was relying
on the assessment of a "State agency *medical consultant*." (T. 22).  However, it is
clear that the individual who completed the RFC form is *not* a doctor, he or she is a
*disability analyst*.  While the agency uses disability analysts frequently, their opinions
would not carry the weight of an opinion rendered by a physician.  Thus, it is not clear
that the ALJ gave proper weight to this RFC evaluation.

The ALJ then states that " . . . claimant retains the capacity to adjust to work
that exists in significant numbers in the national economy." (T. 23).  It is unclear what
that statement means since the ALJ first states that he is giving plaintiff the benefit of
the doubt by finding that she has "severe"[1] mental impairments, but then did not

---

[1] As stated above, Dr. Hameed found that plaintiff did not have "severe" mental
impairments. (T. 127).

13

consider the effect of those impairments [2] on her ability to perform the "full range" of light work.  Although the record shows that these mental conditions were well-controlled with medication, the ALJ's conclusion is unclear.

The ALJ also does not explain how he reaches the conclusion that plaintiff can "adjust" to work that exists in the national economy.  This is not a term that is utilized by any of the medical professionals.  Because this court cannot determine whether the ALJ applied proper legal standards in determining plaintiff's RFC, the court will recommend a remand for a proper evaluation.

## 6.    Credibility

As the fact-finder, the ALJ's function includes evaluating the credibility of all witnesses, including the plaintiff. *See Carroll v. Secretary of HHS*, 705 F.2d 638, 642 (2d Cir. 1983).  The ALJ is free to accept or reject a witness's testimony, however, a finding that the witness is not credible must be set forth with sufficient specificity to permit "an intelligible plenary review of the record." *Williams o/b/o Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988)(citing *Carroll*, 705 F.2d at 643).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record.  *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce

---

[2] Those impairments included slight depression, anxiety, and panic disorder.

the pain or other symptoms alleged...." 20 C.F.R. §§ 404.1529(a), 416.929(a).

Second, if the medical evidence alone establishes the existence of such impairments,

then the ALJ need only evaluate the intensity, persistence, and limiting effects of a

claimant's symptoms to determine the extent to which they limit the claimant's

capacity to work. *Id.* §§ 404.1529(c), 416.929(c).

When the objective evidence alone does not substantiate the intensity,

persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the

credibility of the claimant's subjective complaints by considering the record in light of

the following symptom-related factors: (1) claimant's daily activities; (2) location,

duration, frequency, and intensity of claimant's symptoms; (3) precipitating and

aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication

taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any

measures taken by the claimant to relieve symptoms; and (7) any other factors

concerning claimant's functional limitations and restrictions due to symptoms. *Id.* §§

404.1529(c)(3), 416.929(c)(3).

In this case, the court finds that the ALJ's determination of credibility is

supported by substantial evidence in the record. The record contains inconsistencies

in plaintiff's statements to Dr. Gerson and a consulting psychologist about her fatigue

and weight loss. The record also contains statements in her September 28, 2004

testimony about her ability to travel using public transportation that are inconsistent

with statements in other parts of the record. Although Dr. Bevilaqua recommended

counseling, (T. 109, 100), plaintiff declined, giving inconsistent reasons for this

15

refusal. (T. 207).  It appears that plaintiff "does not believe in [counseling]" even though her treating doctor has recommended it.

Plaintiff's psychiatric examination by Dr. Seltenreich was during the same time period that she was being treated by Dr. Gerson. (T. 116-19).  Plaintiff's statements to Dr. Seltenreich about weight loss are inconsistent with Dr. Gerson's office notes. Plaintiff's statement to Dr. Seltenreich about "rely[ing] on public transportation (T. 118) and her testimony that she uses public transportation to "get back and forth to the doctor", (T. 216), are inconsistent with Dr. Bevilaqua's assessment that plaintiff in essence could not use public transportation because she has "social phobia." (T. 193).

Given these inconsistencies, it appears that plaintiff's limitations are not as great as she alleges or as great as Dr. Bevilaqua states in her assessment.  The ALJ's rejection of plaintiff's credibility is, therefore, supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **REVERSED and REMANDED** pursuant to **SENTENCE FOUR** of 42 U.S.C. § 405(g) for further proceedings consistent with this Report, including a proper assessment of plaintiff's residual functional capacity.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d

15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 11, 2007

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge